IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AVIS MCDUFFIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 06 C 4589 |
| | ) | |
| SISTERS OF ST. FRANCIS HEALTH | ) | Judge Charles R. Norgle |
| SERVICES, INC., d/b/a ST. JAMES | ) | |
| HOSPITAL AND HEALTH CENTERS | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Sisters of St. Francis Health Services, Inc., d/b/a St. James Hospital and Health Centers ("St. James"), by counsel, respectfully submits this brief in support of its Motion to Dismiss Plaintiff's Complaint for Declaratory Relief, Injunctive Relief, and Damages (the "Complaint").

**I. BACKGROUND**

Defendant St. James is a non-profit hospital located in Chicago Heights, Illinois. (Plaintiff's Complaint, ¶ 3.)[1] In her Complaint, the Plaintiff, Avis McDuffie ("McDuffie"), alleges that St. James charged her too much for hospital services provided during a two (2) day hospital admission commencing on or about June 16, 2004. (Compl., ¶¶ 4-5, 8, 20.) Nowhere in her Complaint does McDuffie allege that she ever actually paid St. James anything for the hospital services she received, which were provided more than two (2) years ago. Instead, she merely alleges that St. James billed its "full, undiscounted charges." (Compl., ¶ 8.)

---

[1] A copy of Plaintiff's Complaint is attached to St. James' Notice of Removal (D.E. #1) as **Exhibit A**.

According to McDuffie, she is homeless, uninsured, and cannot afford to pay her hospital bill. (Compl. ¶ 7.) She further alleges that St. James "mailed several demands for payment" of the hospital bill, which caused her to experience "extreme aggravation and inconvenience." (Compl. ¶¶ 11-12.) She also alleges that St. James charged her more than St. James would have accepted as full payment from a private insurer or governmental insurance programs for the same services. (Compl. ¶ 9.) She does not allege that she was denied charity care upon request, but instead claims that St. James failed to screen her for charity care eligibility. (Compl. ¶ 10.)

On or about July 6, 2006, Plaintiff filed her Complaint with the Cook County Circuit Court, but failed to serve St. James with the Complaint or a summons. On or about August 24, 2006, St. James timely removed Plaintiff's action to the United States District Court for the Northern District of Illinois based on federal diversity jurisdiction.[2] Plaintiff's Complaint contains four (4) separate Counts. In Count I and Count III, Plaintiff alleges that St. James violated the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/1, *et seq*. In Count II, Plaintiff alleges that St. James breached an implied contract by charging her an unreasonably high amount. Count IV of the Plaintiff's Complaint is based on the common law principle of unconscionability. Plaintiff seeks various forms of relief, including but not limited to, injunctions, declaratory relief, compensatory damages, punitive damages, and nominal damages. As set forth below, Plaintiff's Complaint should be dismissed in its entirety because it fails to state a claim upon which relief can be granted.

## II. STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

A court may dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where the plaintiff "fails to state a claim upon which relief can be granted." In

---

[2] As set forth in the Notice of Removal, Plaintiff is a citizen of the State of Illinois, and Defendant is incorporated in Indiana and has its principal place of business in Indiana. The value of the damages and equitable relief requested exceeds $75,000.

deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the truth of all facts alleged in a complaint are taken as true and viewed in the light most favorable to the plaintiff. Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994). However, a court is not bound by the plaintiff's legal characterization of the facts or required to ignore allegations set forth in the complaint that undermine the plaintiff's claims. Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992). Dismissal of the complaint is proper "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Cushing v. City of Chicago, 3 F.3d 1156, 1159 (7th Cir. 1993).

### III. ARGUMENT

#### A. COUNT I AND COUNT III OF THE PLAINTIFF'S COMPLAINT FAIL TO STATE CLAIMS UNDER THE ILLINOIS CONSUMER FRAUD ACT.

In Count I and Count III of her Complaint, Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/1, et seq., (the "ICFA") based on St. James' alleged failure to give discounts and charity care to the Plaintiff, who is allegedly poor and uninsured. Plaintiff asserts that St. James' alleged pricing and charity care practices are unfair within the meaning of the ICFA because St. James receives a property tax exemption from the State of Illinois. However, as set forth below, the Plaintiff has failed to plead the necessary elements of an ICFA claim. Moreover, the ICFA does not create an action every time there is a pricing or billing dispute between two parties, nor does it create a means of regulating a hospital's pricing and charity care practices through a private right of action. Accordingly, Plaintiff's ICFA claims should be dismissed.

As an initial matter, Plaintiff's ICFA claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which require a plaintiff to

plead a claim under the ICFA with particularity and specificity. See, Durst v. Illinois Farmers Ins. Co., 2006 WL 140546 at *3 (N.D.Ill. 2006); Costa v. Mauro Chevrolet, Inc., 390 F.Supp.2d 720, 731 (N.D.Ill. 2005); Taylor v. Bob O'Conor Ford, Inc., 2000 WL 876920 at *2 (N.D.Ill 2000). "As articulated by the Seventh Circuit, 'this means the who, what, when, where, and how; the first paragraph of any newspaper story must be evident in the complaint.'" Costa, 390 F.Supp.2d at 726, *quoting* DiLeo v. Ernest & Young, 901 F.2d 624, 627 (7th Cir. 1990).

Here, the Plaintiff's allegations do not satisfy the necessary elements of an ICFA claim. The ICFA applies to unfair as well as deceptive conduct, and the elements of an action include: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002). Furthermore, §10a(a) of the ICFA provides that only a litigant who has suffered "**actual damage**" may maintain a private cause of action. Id.; 815 ILCS 505/10a(a).

As set forth below, Plaintiff's Complaint does not state a claim under the ICFA because it: (1) does not allege damages sufficient to support a private action under the ICFA; (2) does not allege an unfair act or practice on the part of St. James; and (3) does not pertain to commercial activity, as required by the ICFA.

> **1. Plaintiff's allegations of damages are insufficient to support a private action under the Illinois Consumer Fraud Act.**

First, Plaintiff does not allege damages sufficient to support a private cause of action against St. James under the ICFA. It is well settled that a plaintiff must plead that she has suffered actual damages in order to support a private cause of action under the ICFA. Dwyer v. American Express Co., 273 Ill.App.3d 742, 210 Ill.Dec. 375, 652 N.E.2d 1351, 1357 (1995); Duran v. Leslie Oldsmobile, Inc., 229 Ill.App.3d 1032, 171 Ill.Dec. 835, 594 N.E.2d 1355, 1361-

4

1362 (1992); Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012, 1015-1016 (7th Cir. 1999), *reh. den.*; Xydakis v. Target, Inc., 333 F.Supp.2d 683, 685 (N.D.Ill. 2004), *mtn. to recon. den.*, 333 F.Supp.2d 686 (N.D.Ill. 2004); See also, 815 ILCS 505/10(a). In other words, a "*violation* of the Consumer Fraud Act may occur in the absence of damages" but "a *private cause of action* does not arise absent showing both a violation and resultant damages." Duran, 594 N.E.2d at 1362 (Italics in original); See also, Tolve v. Ogden Chrysler Plymouth, Inc., 324 Ill.App.3d 485, 258 Ill.Dec. 153, 755 N.E.2d 536, 540 (2001) (holding that the mere possibility of a lawsuit against co-buyer of a vehicle was insufficient to establish damages under the ICFA and common-law contract theories). The term "actual damages" is not defined in the ICFA but has been defined as "[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury." Greisz v. Household Bank, N.A., 8 F.Supp.2d 1031, 1043 (N.D.Ill. 1998), *quoting* Black's Law Dictionary, 390 (6th Ed. 1990), *affirmed by* Greisz v. Household Bank, N.A., 176 F.3d. 1012 (7th Cir. 1999), *reh. den.*

Here, even if Plaintiff's allegations are accepted as true, they are insufficient to establish that she has suffered actual damage as a result of St. James' alleged violations of the ICFA. Plaintiff does not allege that she paid too much (or anything at all) for the hospital services she received, or that she was wrongfully denied hospital services as a result of her failure to pay. Instead, she merely alleges that St. James charged "its full, un-discounted charges" and that she became "extremely depressed, anxiety ridden" resulting in "extreme aggravation and inconvenience." (Pl.'s Compl. ¶¶ 10-11.) Although Plaintiff alleges that St. James attempts "to collect its charges from even the poorest of patients through collection agents, lawsuits, and the garnishment of wages," she does not allege that St. James has sued her or attempted to garnish her wages. (Compl. ¶ 18.)

5

Plaintiff's allegations of that she experienced "extreme aggravation and inconvenience" upon receipt of the hospital bill cannot support a claim under the ICFA because Plaintiff has not identified any related pecuniary damages. The Seventh Circuit considered and rejected damage allegations similar to Plaintiff's in Greisz, 176 F.3d. at 1016. In Greisz, the plaintiff claimed that "she 'almost fainted' when she saw [an] alleged overcharge on her credit card statement." Id. The Seventh Circuit affirmed the District Court's dismissal of the case, holding that "in a case where the plaintiff cannot show any pecuniary loss but only an emotional injury," a plaintiff cannot recover under the ICFA unless a plaintiff can show "a *serious* degree of distress caused by *outrageous* and not merely unlawful behavior by the defendant." Id.; See also, Dwyer v. American Express Co., 273 Ill.App.3d 742, 210 Ill.Dec. 375, 652 N.E.2d 1351, 1357 (1995), *rehear. den.* (affirming dismissal of ICFA claim where "the only damage plaintiffs could have suffered was a surfeit of unwanted mail"); Thele v. Sunrise Chevrolet, Inc., 2004 WL 1194751, at *4 (N.D.Ill. 2004) (holding that plaintiff's claims of aggravation and inconvenience were insufficient to defeat summary judgment in favor of defendant on ICFA claim).

Similarly, in Xydakis v. Target, Inc., 333 F.Supp.2d 686, 688 (N.D.Ill. 2004), the Northern District of Illinois expressly rejected the plaintiff's arguments that he incurred actual damages when he experienced "aggravation and inconvenience" as a result of Marshall Field's alleged bait-and-switch techniques. Id. The court upheld the dismissal of the plaintiff's complaint because the plaintiff could not establish actual damages in light of the fact that he did not actually spend any money in the store. Id.

Although Plaintiff does not allege that she ever actually paid any part of her hospital bill, she goes on to request the following in her Prayer for Relief: "(1) $10,000 for inconvenience and aggravation; and (2) $50,000 in punitive damages; and (3) nominal damages for the intentional

6

violation of the law." (Compl., Prayer for Relief, Count I and Count III.) There is no basis for awarding Plaintiff damages under the ICFA in light of her underlying allegations.

Plaintiff's request of nominal damages "for the intentional violation of the law" further demonstrates that Plaintiff is overreaching and has not suffered actual damages. Plaintiff's request implies that actual damages are unnecessary to support a private ICFA action when there has been an intentional violation of the ICFA. "Nominal damages are a trifling sum awarded to a plaintiff in an action, where there is no substantial loss or injury to be compensated." Black's Law Dictionary, p. 272 (Abridged 6th Edition). However, Plaintiff concedes in her Complaint that nominal damages may be recovered under the ICFA only if the defendant has *intentionally* violated the ICFA. See, Singleton v. Montgomery Ward Credit Corp., 2000 WL 1810012, at * 3 (N.D.Ill. 2000). Plaintiff's Complaint is completely devoid of any underlying factual allegations that St. James intentionally violated the ICFA, let alone allegations that meet the heightened pleading requirements of Fed.R.Civ.P. 9(b).

In summary, the Plaintiff merely alleges that she experienced aggravation and inconvenience upon receiving an undiscounted hospital bill from St. James. Accordingly, her ICFA claims should be dismissed in light of her failure to plead actual damages. As the Northern District of Illinois held in the Xydakis case, bald allegations of aggravation and inconvenience standing alone cannot support an ICFA action. Plaintiff's Complaint also contains no allegations that would support an award of nominal damages.

**2.    Plaintiff has failed to allege deceptive or unfair conduct within the meaning of the ICFA.**

The ICFA provides for recovery for commercial activity that is deceptive or unfair. Robinson, 775 N.E.2d at 960. Here, Plaintiff does not allege that St. James engaged in deceptive commercial activity. Instead, Plaintiff alleges that St. James engaged in unfair acts and practices

7

by charging her a higher rate than it would charge an insurance company and by failing to provider her with charity care while receiving a state property tax exemption. (See, e.g., Compl., ¶¶ 23, 33.) However, for an allegedly unfair practice to come within the purview of the ICFA, it must: (a) offend public policy; (b) be immoral, unethical, oppressive or unscrupulous; and/or (c) cause substantial injury to consumers. Robinson, 775 N.E.2d at 961. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id., *quoting* Cheshire Mortgage Service, Inc., v. Montes, 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (1992). An analysis of each of these factors indicates that the plaintiff's ICFA claims should be dismissed. Plaintiff's bald legal characterization of St. James' alleged pricing practices as "unfair" does not bring her claim within the purview of the ICFA.

      **a.     The plaintiff has not alleged conduct that offends public policy.**

Plaintiff has not alleged any commercial practices that offend public policy. "A practice, without having been previously considered unlawful, offends public policy if it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations." Garrett v. RentGrow, Inc., 2005 WL 1563162 at *8 (N.D.Ill. 2005). Notwithstanding Plaintiff's characterizations of St. James' alleged actions as violating public policy, the plaintiff has failed to meet the required standard. In asserting that St. James' tax-exempt status requires it to provide Plaintiff charity care, Plaintiff cites the Illinois Constitution, the Illinois Public Aid Code, 305 ILCS 5/5-17, and the Illinois Court of Appeals' decision in Alvio Medical Center v. the Illinois Dept. of Rev., 299 Ill.App.3d 647, 234 Ill.Dec. 23, 702 N.E.2d 189. (Compl. ¶¶ 23, 33.) However, none of these set forth a specific standard of conduct that St. James has allegedly violated.

Essentially, Plaintiff is impermissibly attempting to use the ICFA as a mechanism for enforcing the Illinois Revenue Code through a private action. Plaintiff seeks to have this Court regulate St. James' pricing of services and charitable practices through injunctive relief under the ICFA based on St. James' tax-exempt status under Illinois law. However, the Illinois Department of Revenue determines tax exempt status, subject to appeal by the *property owner* via administrative and judicial review. 35 ILCS 200/15-25. The Illinois Tax Code does not create a private action, and the Illinois Supreme Court has held that private citizens do not have standing to challenge the tax-exempt status of their neighbors because doing so would turn them all into "*de facto* special assistant State's Attorneys and lead to chaos and confusion." Schlenz v. Castle, 115 Ill.2d 135, 104 Ill.Dec. 684, 503 N.E.2d 241, 245 (1986), *reh. den.* In other words, enforcement of the Illinois Tax Code is accomplished by the Illinois Department of Revenue, not by private litigants.

The courts in Illinois have previously rejected similar attempts to use the ICFA as mechanism to enforce a defendant's alleged statutory obligations. For example, a plaintiff cannot use the ICFA to challenge a nursing home's practices that allegedly violate the Medicaid Act, 42 U.S.C. 1396r(h) because the Medicaid Act does not allow for a private right of action. See, Carroll v. Butterfield Health Care, Inc., 2003 WL 22462604 at *3 (N.D.Ill. 2003) (holding that "since the Medicaid Act does not provide a private right of action and because Congress did not created a standard of conduct, which if breached gave rise to a private claim, the Court finds that the [the nursing home's] conduct does not violate public policy").

The Illinois Supreme Court's holding in Laughlin v. Evanston Hospital, 133 Ill.2d 374, 140 Ill.Dec. 861, 550 N.E.2d 986 (Ill. 1990) is particularly relevant to the present case. In Laughlin, the Illinois Supreme Court squarely addressed the issue of whether the ICFA prohibits

9

a hospital from granting large health insurers discounts not offered to other customers. 550 N.E.2d at 992. The plaintiff argued that the defendant hospital's granting of discounts to large insurers was "price discrimination" and an unfair practice prohibited by the ICFA. Id. at 993. Affirming the trial court's dismissal of the plaintiff's action, the Court rejected the plaintiff's arguments and further held that ICFA was not intended as an additional antitrust enforcement mechanism. Id.

Just as the courts in Illinois have rejected attempts to use the ICFA as a means of enforcing defendants' alleged statutory obligations under the Medicaid Act or anti-trust laws, this Court should reject Plaintiff's attempts to use the ICFA as means of enforcing the Tax Code, which clearly does not allow for a private right of action.

      **b.**      **The plaintiff has not alleged actions that are immoral, unethical, oppressive or unscrupulous.**

"A practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer." Garrett, 2005 WL 1563162 at *3. Clearly, Plaintiff's allegations do not meet this standard. Plaintiff simply alleges in a conclusory fashion that the rates St. James charges to uninsured patients are too high and thus "immoral, unethical, and oppressive." (Pl.'s Compl., ¶ 23, 33.)

If Plaintiff's bald allegations are sufficient, then virtually any billing or pricing dispute could be instantly transformed into an ICFA action, which would contradict the purposes of the Act, as well as established Illinois case law. The ICFA "is not intended to be used as a vehicle for transforming nondeceptive and nonfraudulent statements into actionable ones." Crichton v. Golden Rule Ins. Co., 358 Ill.App.3d 1137, 295 Ill.Dec. 393, 832 N.E.2d 843, 851 (2005); See also, Zankle v. Queen Anne Landscaping, 311 App.3d 308, 244 Ill.Dec. 100, 724 N.E.2d 988, 992-93 (2000) (holding that the ICFA "was not intended to apply to every contract dispute").

The Illinois Court of Appeals has held that even an *unconscionably high price* is generally insufficient to establish an unfairness claim under the ICFA. Crichton, 832 N.E.2d at 852. (affirming summary judgment in favor of defendant health insurance company that allegedly improperly increased its premiums).

Here, Plaintiff does not allege that St. James refused or threatened to refuse service on the basis of her insured status or inability to pay. Plaintiff does not allege that she was denied charity care upon request. Although she claims that St. James had a practice of collecting unpaid bills through lawsuits and wage garnishments, she does not allege that St. James did anything more than send her an undiscounted hospital bill and request payment. Plaintiff's allegations do not show that St. James' conduct was immoral, unethical, oppressive or unscrupulous.

  **c. Plaintiff has not alleged that St. James' actions cause substantial injury to consumers.**

"A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." Garrett, 2005 WL 1563162 at * 4. Here, Plaintiff's broad legal characterizations that St. James' engages in practices that cause substantial injury to consumers cannot survive dismissal. As set forth in the previous sections, Plaintiff has failed to show that she has been damaged herself, and therefore, she cannot show that St. James engages in practices that cause substantial injury to consumers.

  **3. The plaintiff's allegations do not pertain to commercial activity as required by the Illinois Consumer Fraud Act.**

The ICFA only applies to a defendant's practices occurring "during a course of conduct involving trade or commerce." See, Robinson, 775 N.E.2d at 960; Pappas v. Pella Corp., 363 Ill.App.3d 795, 300 Ill.Dec. 552, 844 N.E.2d 995, 998 (2006), *reh. den.*; See also, 815 ILCS 505/2. Not all actions taken by a corporation or enterprise involve commerce or trade such as to

implicate the ICFA. See, e.g., Cripe v. Leiter, 184 Ill.2d 185, 234 Ill.Dec. 488, 703 N.E.2d 100, 107 (1998), *reh. den.*, (holding that the ICFA "was not intended to apply to an attorney's billing of a client for legal fees"); Evanston Hospital v. Crane, 254 Ill.App.3d 435, 193 Ill.Dec. 870, 627 N.E.2d 29, 36 (1993) (holding that the ICFA did not apply to a professional negligence counterclaim brought by patient against hospital in response to a collection action). Moreover, generally only consumers can bring an action under the ICFA. Tandy v. Marti, 213 F.Supp.2d 935, 937 (S.D.Ill. 2002). Pursuant to 815 ILCS 505/1(e), a consumer is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."

Here, Plaintiff's ICFA claims are devoid of allegations that Plaintiff contracted with St. James or purchased services.[3] Instead, she claims that St. James should provide her with charity care. As Plaintiff is essentially attempting to regulate St. James' charitable practices and policies, her ICFA claims do not involve trade or commerce and do not fall within the scope of the ICFA. Not only does she seek compensatory and punitive damages, but she requests the Court to issue an injunction regulating St. James' practices with respect to charitable care.[4] The relief Plaintiff seeks cannot be granted under the ICFA because the alleged failure to provide charitable care does not amount to trade or commerce.

**B.  COUNT II OF PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.**

Count II of Plaintiff's Complaint fails to state a claim for breach of contract and should be dismissed. Plaintiff does not allege the necessary elements for a breach of contract action. To

---

[3] The remaining counts conflict on this point. In Count III, Plaintiff alleges that St. James breached an implied contract. In Count IV, which is based on the principle of unscionablility, Plaintiff ostensibly challenges whether a contract was formed.

[4] Among other things, Plaintiff requests that the Court "[e]njoin the hospital from continuing to write off the hospital bills of charge (sic) uninsured persons with low income." (Complaint, Count III, Prayer for Relief, ¶ C.)

12

state a cause of action for breach under Illinois common law, a party must demonstrate: (a) the existence of a valid contract; (b) the performance of all obligations of the contract by the plaintiff; (c) breach of contract; and (d) damages resulting to the plaintiff. Klem v. Mann, 279 Ill.App.3d 735, 216 Ill.Dec. 454, 665 N.E.2d 514, 518 (1996); Hickox v. Bell, 195 Ill.App.3d 976, 142 Ill.Dec. 392, 552 N.E.2d 1133, 1143 (1990).

Plaintiff alleges the existence of an implied contract with St. James, but she does not allege what obligations, if any, she had under the implied contract, nor does she allege that she performed those obligations. Moreover, as set forth above, she does not state any allegations showing that she has been damaged. Plaintiff never alleges that she paid St. James anything at all for the services rendered.

Moreover, Plaintiff's allegations do not form a basis for declaratory relief. Ostensibly, Plaintiff seeks to avoid any obligations she might have for the hospital bill. However, Plaintiff does not cite the statutory basis of her request for declaratory relief, such as the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, or Illinois Declaratory Judgment Act, 735 ILCS 5/2-701. The state and federal statutes both require the existence of an actual controversy, and the Plaintiff's Complaint contains no such allegations. Plaintiff simply alleges that she was over billed without alleging that she ever actually paid anything, or that St. James has threatened her with any legal action. As there are no allegations of an actual controversy, Plaintiff' request for a declaratory judgment must fail because a "declaration of nonliability for past conduct is not a function of the declaratory judgment statute." See, Eyman v. McDonough District Hospital, 245 Ill.App.3d 394, 184 Ill.Dec. 502, 613 N.E.2d 819, 821 (1993). Accordingly, Count II fails to state a claim upon which relief can be granted.

### C. COUNT IV OF THE PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count IV of Plaintiff's Complaint is based on the equitable concept of unconscionability. "A contract may be treated as unconscionable when it is improvident, oppressive, or totally one-sided." Ahern v. Knecht, 202 Ill.App.3d 709, 150 Ill.Dec. 660, 563 N.E.2d 787, 792 (1990), *reh. den.* The principle of unconscionability "becomes meaningful always in the context of otherwise defined factors of inequality, deception and oppression" and its application "requires extreme circumstances." Taylor v. Bob O'Connor Ford, Inc., 2000 WL 876920, at *3 (N.D.Ill. 2000) (dismissing claim based on unconscionability). When evaluating whether a contract is unconscionable, a court should consider such factors as gross disparity of the values exchanged, gross inequality of the parties' bargaining power, terms that unreasonably favor the stronger party, the parties' age, education and commercial experience, and the existence of meaningful choice. Ahern, 563 N.E.2d at 792.

Based on the analysis of the Plaintiff's ICFA claims above, Plaintiff has failed to plead extreme circumstances justifying the application of the doctrine of unconscionability to the present case. Furthermore, the plaintiff does not allege the existence of a contract anywhere in Count IV, and therefore, there is no basis for applying the doctrine of unconscionability. The only place the plaintiff even alleges the existence an *implied* contract is in Count II where she alleges that "where services are provided without an agreed price term, an implied contract exists for the reasonable value of the services rendered." (Compl., Count II, ¶ 28.) It would be absurd to find that an implied contract to charge a reasonable price is unconscionable.

Finally, there is no legal authority for the relief that the plaintiff requests under Count IV. She vaguely seeks a declaration that St. James' actions are "unconscionable" and requests injunctive relief regulating St. James' pricing and charitable practices, not only with respect to

Plaintiff, but all patients. Count IV is devoid of any allegations supporting declaratory or injunctive relief, and such relief is not available under the law.

## IV. CONCLUSION

The central allegation of Plaintiff's Complaint is that she was charged too much for the hospital services she received. However, the ICFA simply does not create a cause of action every time a party feels that it has been charged too much. Merely characterizing a party's conduct as unfair does not open it up to scrutiny under the ICFA. Plaintiff's allegations do not support claims under the ICFA, and the allegations of Count II and Count IV are also insufficient and request relief that cannot be granted.

If the Court finds that Plaintiff's allegations are within the purview of the ICFA, then virtually any pricing or billing dispute could be subject to litigation under the ICFA, which is contrary to the purposes of the Act. The ICFA is also not intended to create a mechanism for enforcing the Illinois Tax Code and regulating the activities of a tax exempt charitable hospital through a private suit. For these and the other foregoing reasons, this Court should decline the Plaintiff's invitation to regulate the charitable activities and pricing practices of St. James Hospital and Health Centers.

WHEREFORE, Defendant Sisters of St. Francis Health Services, Inc., d/b/a St. James Hospital and Health Centers, respectfully requests that the Court dismiss the Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

KRIEG DEVAULT, LLP

 s/ Jeffrey M. Monberg
Jeffrey M. Monberg (IL No. 6270295)
One of the Attorneys for the Defendant

15

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 13, 2006, the foregoing **Memorandum of Law in Support of Defendant's Motion to Dismiss** was electronically filed using the CM/ECF system which will send notification of such filing to all attorneys of record who have registered for e-mail delivery.

s/ Jeffrey M. Monberg

Patrick J. Galvin
Jeffrey M. Monberg
KRIEG DEVAULT, LLP
5231 Hohman Avenue, Suite 717
Hammond, IN 46320
(219) 933-0380
Attorney for Defendant Sisters of St. Francis
Health Services, Inc., d/b/a St. James Hospital
and Health Centers

92501v2